**ALBERTSONS, INC., an Idaho corporation, Petitioner,**

v.

**DEPARTMENT OF EMPLOYMENT SECURITY, and Gayle Fullerton, Respondents.**

No. 920530–CA.

Court of Appeals of Utah.

May 18, 1993.

---

John S. Chindlund, Robert G. Wing, and Roger J. McConkie, Prince, Yeates & Geldzahler, Salt Lake City, for petitioner.

K. Allan Zabel and Emma R. Thomas, Sp. Asst. Attys. Gen., Dept. of Employment Sec., Salt Lake City, for respondents.

Before BILLINGS, P.J., GARFF and GREENWOOD, JJ.

BILLINGS, Presiding Judge:

Petitioner Albertsons, Inc. (Albertsons), appeals the final decision of the Board of Review of the Utah Industrial Commission (Board) awarding unemployment compensation benefits to the claimant, Gayle Fullerton (Fullerton). In affirming the decision of the Administrative Law Judge (ALJ), a majority of the Board concluded Fullerton was not discharged from his employment for "just cause" under Utah Code Ann. § 35–4–5(b)(1) (Supp.1992). We affirm.

## FACTS

On April 3, 1992, Albertsons discharged Fullerton, an eleven year employee, claiming he damaged an Albertsons forklift. The incident resulting in Fullerton's termination occurred on April 2, 1992, and involved changing a 1500 pound forklift battery. To change a battery, the battery must first be pushed out of the forklift onto a rack system with rollers. A new battery is then moved onto the forklift with rollers and held in place by a heavy metal plate. This process takes two people.

Fullerton and Earl Ellis (Ellis), the maintenance worker assisting Fullerton with the battery change, describe the incident at issue differently. Fullerton claims he accidentally damaged the forklift. According to Fullerton, he slipped while standing on the oily rollers and as he fell the metal plate he was holding in his hand inadvertently hit the forklift twice before he regained his balance. Fullerton maintains he did not break the plastic cover to the forklift battery, he claims it was broken before he went into the battery area.

Conversely, Ellis claims the damage done to the forklift was intentional. Ellis testified he personally saw Fullerton beat on the forklift resulting in damage to the battery cover. According to Ellis, Fullerton had trouble putting the retaining plate on the forklift and "started beating on the machine." Ellis reported to Albertsons that Fullerton purposely damaged the battery cover. However, Fullerton claims Ellis's testimony is inaccurate because Ellis could not see his feet from where he was standing and thus could not see whether he slipped.

Albertsons's company policy allows for the immediate dismissal of an employee who willfully damages company property. Fullerton was aware of the policy, having signed a company policy sheet on April 8, 1991, which set forth among other causes of dismissal the "[u]nauthorized ... damage to company ... property."

As a result of this incident, Fullerton's supervisor dismissed Fullerton on April 3, 1992, finding Fullerton willfully broke the plastic battery cover. The supervisor based his decision on Ellis's report and Fullerton's past record of similar reprimands.[1]

Fullerton applied for unemployment insurance compensation after his discharge from employment at Albertsons. The Utah Department of Employment Security denied benefits. Fullerton objected to the ruling and a hearing was held before an ALJ on June 1, 1992.

The ALJ awarded benefits to Fullerton. Acknowledging the conflict in testimony, the ALJ found the damage done to the Albertsons forklift was accidental. The ALJ stated:

> While their [Fullerton's and Ellis's] testimony is different, the claimant seems more credible to the Administrative Law Judge....
>
> ....
>
> The employer did not establish by a preponderance of the evidence that the claimant's actions rose to the level of culpability, knowledge and control to impose a disqualification. The claimant's testimony is accepted that the damage done on April 2, 1992 was accidental.

In reaching this determination, the ALJ gave Fullerton's past reprimands no weight. The ALJ found Albertsons violated its union agreement by considering past reprimands when deciding to dismiss Fullerton, since both incidents occurred more than two years earlier, well outside the time limitation for consideration under the union contract.

Albertsons appealed the decision of the ALJ to the Board. On July 27, 1992, the Board, with one dissent, adopted the findings of the ALJ and affirmed the decision of the ALJ that Albertsons did not have just cause within the meaning of section 35–4–5(b)(1) for discharging Fullerton. The Board found:

> In affirming the decision of the Administrative Law Judge, the Board of Review notes that the employer is correct in its argument that *this case hinges on balancing the respective credibility of Mr. Ellis and the claimant.* The ALJ, who had the opportunity to observe the demeanor of both witnesses, made a specific finding that the claimant "seems more credible to the Administrative Law Judge." The Board of Review only reviews written transcripts and documents associated with the Administrative Law Judge hearing and does not have the opportunity to observe witnesses. *The Board must, therefore, rely on the impressions of the ALJ on matters of credibility derived from observing the de-*

---

1. Prior to the April 2, 1992 incident, Fullerton received two warning notices from Albertsons. In April of 1989, Fullerton, while talking to another employee about a business matter, forgot he had not lowered the forks on his forklift. When he drove away the forks caught an object which resulted in the forklift tipping over. Fullerton was placed on suspension without pay from April 20, 1989 to April 25, 1989.

The second warning was in January of 1990 when Fullerton kicked and damaged a door while "horsing around" with members of his crew on Super Bowl Sunday. For this infraction Fullerton received two weeks suspension without pay.

Importantly, Albertsons has a union contract which provides that warnings will not remain in effect for more than one year.

*meanor of the witness.* Since the Administrative Law Judge found the claimant to be more believable than the employer witness and since the ALJ's finding of fact that the claimant accidentally slipped and inadvertently broke the battery plate is supported by substantial evidence in the record, the Board affirms that finding and affirms the Administrative Law Judge's decision that the employer did not have just cause within the meaning of the Utah Employment Security Act for discharging the claimant. (Emphasis added).

On appeal, Albertsons claims Fullerton was terminated for just cause because he willfully destroyed company property, and knew, or should have known, his actions could result in his termination. In so claiming, Albertsons essentially challenges the Board's finding the incident was accidental.

## STANDARD OF REVIEW

These proceedings were commenced after January 1, 1988, therefore our review is governed by the Utah Administrative Procedures Act (UAPA). *See* Utah Code Ann. § 63–46b–0.5 to –22 (1989 & Supp.1992). Judicial review of agency action under UAPA is controlled by Utah Code Ann. § 63–46b–16 (1989).

■ Because this appeal involves the application or interpretation of an agency-specific statute we must determine whether review is under section 63–46b–16(4)(d) or section 63–46b–16(4)(h)(i).[2] *See SEMECO Indus., Inc. v. Auditing Div.*, 849 P.2d 1167, 1173 (Utah 1993) (Durham, J., dissenting); *King v. Industrial Comm'n*, 850 P.2d 1281, 1285–1286 (Utah App.1993). If Utah Code Ann. § 35–4–5(b)(1) (Supp.1992)

contains a legislative grant of discretion to the Board, we review under section 63–46b–16(4)(h)(i) for reasonableness. However, if it contains no grant of discretion, we review under section 63–46b–16(4)(d) for correction of error. *Morton Int'l, Inc. v. Auditing Div.*, 814 P.2d 581, 587–89 (Utah 1991); *King*, 850 P.2d at 1285–1286. *See also SEMECO*, 849 P.2d at 1173 (Durham, J., dissenting).

Section 35–4–5(b)(1) provides a claimant is ineligible for unemployment benefits if the individual is "discharged for just cause ... if so found by the commission." Utah Code Ann. § 35–4–5(b)(1) (Supp.1992). This explicit grant of discretion to the Industrial Commission to apply the statute requires we review the Board's action under section 63–46b–16(4)(h)(i) for reasonableness. *See Morton*, 814 P.2d at 589; *King*, 850 P.2d at 1291. *See also Bhatia v. Department of Employment Sec.*, 834 P.2d 574, 577 (Utah App.1992); *Gibson v. Department of Employment Sec.*, 840 P.2d 780, 783 (Utah App.1992); *Wagstaff v. Department of Employment Sec.*, 826 P.2d 1069, 1072 (Utah App.1992); *Department of Air Force v. Swider*, 824 P.2d 448, 451 (Utah App.1991).

## JUST CAUSE TERMINATION

■ In this appeal we must decide whether the Board reasonably concluded Fullerton was not discharged for just cause and is therefore entitled to unemployment benefits. Albertsons bears the burden of proving just cause for Fullerton's termination. *See* Utah Code Admin.P. R562–5b–103; *Bhatia*, 834 P.2d at 577. To establish just cause, Albertsons must show Fullerton's conduct involved three factors: 1) culpability, 2) knowledge and 3) control. *See* Utah Code Admin.P. R562–5b–102.[3] *Ac-*

---

**2.** Section 63–46b–16(4) provides in part:
(4) The appellate court shall grant relief only if, on the basis of the agency's record, it determines that a person seeking judicial review has been substantially prejudiced by any of the following:
.....
(d) the agency has erroneously interpreted or applied the law;
.....

(h) the agency action is:
(i) an abuse of the discretion delegated to the agency by statute;....
Utah Code Ann. § 63–46b–16(4) (1989).

**3.** Counsel for Albertsons erroneously cites to Utah Code Admin.P. R475–5b–102 (1991) for the factors which establish just cause. The Administrative Code has been renumbered in the 1992 version and Utah Code Admin.P. R562–5b–102

cord *Bhatia v. Department of Employment Sec.,* 834 P.2d 574, 577 (Utah App. 1992); *Nelson v. Department of Employment Sec.,* 801 P.2d 158, 161 (Utah App. 1990). "The failure to establish any one of the three factors is fatal to ... [the employer's] claim of just cause." *Department of Air Force v. Department of Employment Sec.,* 786 P.2d 1361, 1364 (Utah App.1990), *cert. denied sub nom. U.S. v. Industrial Comm'n,* 795 P.2d 1138 (Utah 1990) (citing *Pro–Benefit Staffing, Inc. v. Board of Review,* 775 P.2d 439, 442–43 (Utah App.1989)). In the instant case, we need not reach the issues of knowledge and control as we uphold the Board's determination that Fullerton's conduct was not culpable.

### Culpability

■ Rule R562–5b–102(1)(a) provides guidance to the Board in determining whether an employee's conduct was sufficiently culpable to deny benefits. In defining culpability, these regulations provide

> [t]he wrongness of the conduct must be considered in the context of the particular employment and how it affects the employer's rights. If the conduct was an isolated incident of poor judgment and there is no expectation that the conduct will be continued or repeated, potential harm may not be shown and therefore it is not necessary to discharge the employee.

Utah Code Admin.P. R562–5b–102(1)(a). *See Gibson v. Department of Employment Sec.,* 840 P.2d 780, 783–84 (Utah App. 1992); *Nelson v. Department of Employment Sec.,* 801 P.2d 158, 161–62 (Utah App. 1990); *Pro–Benefit Staffing, Inc. v. Board of Review,* 775 P.2d 439, 443 (Utah App. 1989).

In *Gibson,* this court called for a liberal construction of the Employment Security Act to assist those attached to the work force, stating " 'mere inefficiency or failure of good performance as the result of inability or incapacity, inadvertences, isolated instances of ordinary negligence, or good-faith errors in judgment or decisions do not constitute culpable conduct which pre-

cludes a discharged employee from receiving unemployment compensation benefits.' " *Gibson,* 840 P.2d at 783 (quoting *Logan Regional Hosp. v. Board of Review,* 723 P.2d 427, 429 (Utah 1986)).

In resolving the conflicting testimony, the ALJ found "the claimant seems more credible to the Administrative Law Judge," thus "[t]he claimant's testimony is accepted that the damage done on April 2, 1992 was accidental."

In affirming the decision of the ALJ, the Board adopted the ALJ's Findings of Fact and Conclusions of Law. The Board stated:

> The Board must, therefore, rely on the impressions of the ALJ on matters of credibility derived from observing the demeanor of the witnesses. Since the Administrative Law Judge found the claimant to be more believable than the employer witness ... the Board affirms that finding.

[5–7] Albertsons necessarily challenges the Board's finding that Fullerton did not intentionally beat on an Albertsons forklift in their effort to demonstrate Fullerton's conduct was culpable. In seeking to overturn the Board's factual findings Albertsons bears a heavy burden. "[T]his court grants great deference to an agency's findings, and will uphold them if they are 'supported by substantial evidence when viewed in light of the whole record before the court.' " *Department of Air Force v. Swider,* 824 P.2d 448, 451 (Utah App.1991) (quoting Utah Code Ann. § 63–46b–16(4)(g) (1989)). " 'Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ' " *Grace Drilling Co. v. Board of Review,* 776 P.2d 63, 68 (Utah App.1989) (quoting *Idaho State Ins. Fund v. Hunicutt,* 715 P.2d 927, 930 (Idaho 1985) (quoting *Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966))). "In applying the substantial evidence test, we review the 'whole record' before the court, and consider both evidence that supports the Board's

(1992) is the applicable rule, since the incident     at issue occurred in 1992.

findings and evidence that fairly detracts from them." *Swider*, 824 P.2d at 451.

■ We defer to the Board's assessment of conflicting evidence. We are in no position to second guess the detailed findings of the ALJ which were adopted by the Board. It is not our role to judge the relative credibility of witnesses. "In undertaking such a review, this court will not substitute its judgment as between two reasonably conflicting views, even though we may have come to a different conclusion had the case come before us for de novo review." *Grace Drilling*, 776 P.2d at 68. "It is the province of the Board, not appellate courts, to resolve conflicting evidence, and where inconsistent inferences can be drawn from the same evidence, it is for the Board to draw the inferences." *Id. Accord Logan Regional Hosp. v. Board of Review*, 723 P.2d 427, 428 (Utah 1986); *Buick v. Department of Employment Sec.*, 752 P.2d 358, 360 (Utah App.1988).

Accepting Fullerton's testimony, as did the ALJ and the Board, there is substantial evidence to support a finding the incident was an accident and Fullerton did not willfully destroy Albertsons's property. Thus, we find reasonable the Board's determination that Fullerton's conduct did not rise to the level of culpability required to deny unemployment benefits.

## CONCLUSION

We defer to the Board's assessment of conflicting evidence, and find reasonable the Board's determination that Albertsons did not have just cause within the meaning of the Utah Employment Security Act for discharging Fullerton. Therefore, we affirm the award of unemployment compensation benefits to Fullerton.

GARFF and GREENWOOD, JJ., concur.