2011 UT App 7

**SALT LAKE DONATED DENTAL SERVICES, INC., Petitioner,**

v.

**DEPARTMENT OF WORKFORCE SERVICES, Workforce Appeals Board, Respondent.**

No. 2010048–CA.

Court of Appeals of Utah.

Jan. 13, 2011.

---

Kamron A. Keele, Salt Lake City, for Petitioner.

Jaceson R. Maughan, Salt Lake City, for Respondent.

Before Judges THORNE, VOROS, and CHRISTIANSEN.

## MEMORANDUM DECISION

VOROS, Judge:

¶ 1 Salt Lake Donated Dental Services, Inc. (Employer) seeks review of a decision of

the Workforce Appeals Board (the Board) granting Stephen Vuyk (Claimant) unemployment benefits on the ground that Employer did not terminate Claimant for "just cause." *See generally* Utah Code Ann. § 35A–4–405(2)(a) (Supp.2010) (providing that a claimant is ineligible for benefits if "discharged for just cause"). We affirm.[1]

¶ 2 In September 2008, Employer, a non-profit corporation, hired Claimant as a "professional fund raiser." Claimant was terminated less than seven months later for "inability to meet [Employer's] standards." More specifically, Claimant was terminated because he was hired to raise an average of about $15,000 per month—an amount he agreed at hiring was a reasonable goal—but only raised an average of approximately $3,400 per month. Employer contends that the Board erroneously concluded that Employer lacked just cause to terminate Claimant.

¶ 3 The Board's findings of fact, "if supported by evidence, are conclusive and the jurisdiction of the court is confined to questions of law." *Id.* § 35A–4–508(8)(e) (2005). Thus, factual findings will be reversed "only if the findings are not supported by substantial evidence." *Drake v. Industrial Comm'n,* 939 P.2d 177, 181 (Utah 1997).

¶ 4 "When we review an agency's application of the law to a particular set of facts, we give a degree of deference to the agency.... Thus, we will uphold the [Board's] decision so long as it is within the realm of reasonableness and rationality." *EAGALA, Inc. v. Department of Workforce Servs.,* 2007 UT App 43, ¶ 9, 157 P.3d 334 (alteration in original) (internal quotation marks omitted).

¶ 5 "An employee will not be awarded unemployment benefits if the Department of Workforce Services concludes that the employee was discharged for just cause." *Id.* ¶ 20 (citing Utah Code Ann. § 35A–4–405(2)(a) (2005)). "To establish 'just cause,' three elements must be present: culpability, knowledge, and control." *Id.* (internal quota-

tion marks omitted); *see also* Utah Admin.Code R994–405–202 (identifying the same three elements to establish just cause). "The employer must establish each of the three elements ... for the Board to deny benefits." *Gibson v. Department of Emp't Sec.,* 840 P.2d 780, 783 (Utah Ct.App.1992). Because we affirm the Board's conclusion that Employer failed to establish the element of control, we need not examine the culpability and knowledge prongs of the just cause inquiry.

¶ 6 "To satisfy the element of control in cases involving a discharge due to unsatisfactory work performance, it must be shown the claimant had the ability to perform the job duties in a satisfactory manner." Utah Admin. Code R994–405–202(3)(b). "[C]ontinued inefficiency, repeated carelessness or evidence of a lack of care expected of a reasonable person in a similar circumstance may satisfy the element of control if the claimant had the ability to perform satisfactorily." *Id.* R994–405–202(3)(a). "In general, if the claimant made a good faith effort to meet the job requirements but failed to do so due to a lack of skill or ability and a discharge results, just cause is not established." *Id.* R994–405–202(3)(b).

¶ 7 Employer first contends that the Board erred in ruling that Claimant lacked the ability to perform his job duties. Those job duties, according to Employer, included meeting mutually-agreed-upon monthly and yearly fundraising goals. As proof that Claimant had the ability to meet these fundraising goals, Employer relies on the fact that Claimant was an experienced fundraiser who had agreed that the fundraising goals were reasonable.

¶ 8 Employer also contends that the Board erred in ruling that Claimant made a good faith effort to meet the job requirements. Specifically, Employer argues that (1) the Board's conclusion that Claimant made a good faith effort but was hampered by the economy "is completely at odds with reality and with what the Employer and the Claim-

---

1. We have determined that "[t]he facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument." Utah R.App. P. 29(a)(3).

ant had specifically agreed to and understood throughout his employment"; (2) the Board, having given "unwarranted weight to the Claimant's unsupported statements," drew an inference that "was simply not true," namely, that Claimant needed more time to bring his projects to fruition; (3) the Board's conclusion that the Employer's fundraising success after Claimant's termination was due in part to Claimant's efforts was "complete speculation"; (4) the Board's conclusion that Claimant worked the required hours was "pure speculation" and "entirely untrue"; (5) the Board erroneously concluded that had Claimant been employed longer, he might have been able to meet Employer's expectations; (6) the Board was "inexplicably persuaded" by Claimant's "mere suggestion that he did the best he could," which was "simply not true based on the facts"; (7) the Board "failed to consider" that Claimant was caught falsifying his time card; and (8) Claimant lied about his job qualifications on his resume and otherwise.

■ ¶ 9 Before turning to the merits of Employer's claims, we address a question related to the record on appeal. A large majority of the record citations in the portion of Employer's brief arguing that Claimant did not act in good faith refer to affidavits that were not before the Administrative Law Judge (the ALJ) or the Board at the time they made their determinations. These affidavits were exhibits attached to Employer's request for reconsideration filed with the Board December 14, 2009, three weeks after the Board issued its ruling.[2] The Board denied the request without comment.

¶ 10 On appeal, the Board contends that this court should not reverse based on allegations in these affidavits. The Board points out that, by rule, "[a]bsent a showing of unusual or extraordinary circumstances, the Board will not consider new evidence on appeal if the evidence was reasonably available and accessible at the time of the hearing before the ALJ." Id. R994–508–305(2). In effect, the Board argues that if evidence offered for the first time on appeal before the Board is inadmissible absent a showing of either unavailability or extraordinary circumstances, at least as high a standard should apply to evidence offered for the first time in a request for reconsideration. Employer contends neither that rule 994–508–305(2) is inapplicable nor that its requirements are satisfied here, except with respect to allegations that Claimant lied on his resume. We read this as a tacit concession that rule 994–508–305(2) bars all information in the untimely affidavits not related to the allegation that Claimant lied on his resume. And we agree that it does.

¶ 11 As for information in the untimely affidavits related to the allegation that Claimant lied on his resume, Employer alleges that this information did not come to light until after the hearing; therefore, even under the rule, it should have been admitted to show that Claimant did not act in good faith. The sequence of events was as follows: the telephone hearing before the ALJ was held on September 21, 2009; one week later, on September 28, 2009, Employer appealed the decision of the ALJ and sent a letter to Claimant "to supplement the grounds for his termination of employment," including the allegation that he had lied on his resume; the Board issued its decision on November 24, 2009; Employer filed its request for reconsideration, to which the affidavits in question were attached as exhibits, on December 14, 2009. Thus, before filing its appeal with the Board, Employer was aware of facts supporting its claim that Claimant had lied on his resume, yet it did not submit the supporting evidence to the Board until three weeks after the Board had ruled. Employer offers no explanation for this delay.

¶ 12 On these facts, we cannot say that the Board abused its discretion in disregarding the affidavits submitted in connection with a request for reconsideration. Our supreme court has cited with approval a decision of the United States Court of Appeals for the Seventh Circuit holding that a federal agency did not abuse its discretion in "refusing to consider new evidence on a petition for re-

2. The Utah Administrative Procedures Act permits the filing of a request for reconsideration "stating the specific grounds upon which relief is requested." Utah Code Ann. § 63G–4–302(1)(a) (2008).

consideration, because 'if a party were free to reshape its case, so long as it did so within 20 days after a decision, the administrative process might never end.' " *Western Water, LLC v. Olds,* 2008 UT 18, ¶ 31, 184 P.3d 578 (quoting *Toledo, Peoria & W. Ry. v. Surface Transp. Bd.,* 462 F.3d 734, 753 (7th Cir. 2006)). Accordingly, while this is not precisely the situation addressed by rule 994–508–305(2), we do not consider the untimely affidavits in determining whether the Board's decision was supported by substantial evidence.[3]

■ ¶ 13 We now turn to the merits of Employer's claims on appeal. Employer frames its appeal as a challenge to the Board's application of the law to facts rather than as a challenge to the Board's findings of fact. However, contentions that the Board's conclusions are "completely at odds with reality," "pure speculation," and "simply not true based on the facts," or that the Board accorded a witness's testimony "unwarranted weight," drew an inference that "was simply not true," and was "inexplicably persuaded" by a witness's testimony are classic attacks on factual findings.

■ ¶ 14 As stated above, the Board's findings will be reversed "only if the findings are not supported by substantial evidence." *See Drake v. Industrial Comm'n,* 939 P.2d 177, 181 (Utah 1997). Substantial evidence is "more than a mere scintilla of evidence ... though something less than the weight of the evidence." *Martinez v. Media–Paymaster Plus/Church of Jesus Christ of Latter-Day Saints,* 2007 UT 42, ¶ 35, 164 P.3d 384 (omission in original) (internal quotation marks omitted). Moreover, we "defer to the Board's assessment of conflicting evidence.... It is not our role to judge the relative credibility of witnesses." *Albertsons, Inc. v. Department of Emp't Sec.,* 854 P.2d

570, 575 (Utah Ct.App.1993). "It is the province of the Board, not appellate courts, to resolve conflicting evidence, and where inconsistent inferences can be drawn from the same evidence, it is for the Board to draw the inferences." *Id.* (internal quotation marks omitted).

¶ 15 The Board found that Claimant "made a good faith effort to succeed with [Employer], but was hampered by the economy, by the long-term nature of fundraising, and by the fact that most of the events he planned happened after he was discharged." This determination finds support in the record. The ALJ found that Claimant "credibly testified during the hearing that he had done his best to meet [Employer]'s expectations." [4] The Board noted that Claimant planned twelve to thirteen fundraising events, which included motorcycle rides, golf tournaments, various galas, and an event with a prominent ecclesiastical leader. Some of these events— including what Claimant deemed "large events"—did not occur until after Claimant was terminated. In fact, Claimant testified that some fundraising events take six months to one year to complete and he was only employed for six and a half months. Claimant also testified that he worked on creating a new website and logo for Employer, but that those projects were actually inhibited by Employer.

¶ 16 The record also supports the Board's finding that "outside factors" beyond Claimant's control, such as the poor economy, hindered his performance. Claimant testified specifically about two fundraising events he had planned that failed due to the poor economy. One such event failed because the organization Claimant was conducting the event with—a Utah professional football team—suspended operations because of the poor economy. Employer concedes on appeal that "[o]f course the poor economy ham-

---

3. Employer also argues that the affidavits were "before the Board on reconsideration (which motion the Board refused to consider), were specifically stamped as received and accepted by the Board, and were made by the Board, and certified by [the Board], [as] a part of the record in this case." However, the mere fact that affidavits were attached to a denied request for reconsideration and thus found their way into the Board's file and in turn into the record on appeal does not establish that the Board did, or was required to, consider them in its just cause calcu-

lus. *Cf. State v. Bredehoft,* 966 P.2d 285, 290 (Utah Ct.App.1998) (holding that affidavits supporting a motion to remand "do not automatically become evidence before the trial court on remand"). Such a rule would place the question of admissibility in the hands of the individual parties.

4. The Board adopted the ALJ's reasoning and conclusions of law in full.

pered [Claimant's] fundraising efforts" but argues that "such is not the point" because "the economy has little, if anything, to do with whether [Claimant] made a good faith effort at his job." However, Claimant's discharge for failure to achieve specified fundraising goals was justified by good cause only if achieving those goals was within his control. *See* Utah Admin. Code R994–405–202(3)(a). Obviously, fundraising success may be affected by various factors outside the fundraiser's control. *Cf. Nicolosi v. Department of Workforce Servs.*, 2010 UT App 299, para. 5, 2010 WL 4264439 (mem.) (per curiam) (holding that engaging in confrontational behavior was within a claimant's personal control); *White v. Board of Review*, 778 P.2d 21, 25 (Utah Ct.App.1989) (finding control established where a claimant's behavior "was solely within her personal control"). Accordingly, the degree to which Claimant's efforts were hampered by the state of the economy—which was clearly not within his control—was relevant.[5]

¶ 17 In sum, the Board's findings are based on substantial evidence and its conclusion that control was not established is "within the realm of reasonableness and rationality," *see EAGALA, Inc. v. Department of Workforce Servs.*, 2007 UT App 43, ¶ 9, 157 P.3d 334. We therefore affirm.[6]

¶ 18 WE CONCUR: WILLIAM A. THORNE JR., and MICHELE M. CHRISTIANSEN, Judges.

---

**5.** Employer repeatedly argues that the Board's findings that Claimant's fundraising efforts were hampered by the weakening economy "are misleading and false" and "completely at odds with reality." Employer asserts that Claimant "simply did not testify that the poor economy was the reason for his failure to reach the fundraising goal at all." That is not how we read the record. Claimant's testimony on this point demonstrates that Claimant did testify that the weak economy affected his fundraising:

[COUNSEL] You mentioned about the economy. What part did the economy play in you not obtaining money?

[CLAIMANT] Well, no, I mentioned the economy because of the grants that [the Employer's executive director] had mentioned that she

---

wasn't able to bring in. *She knows that the economy is—has affected the grants, and it's affected fundraising all around. My particular events, I believe the [hockey] event was definitely affected by the economy.*
(Emphasis added.)

**6.** To the extent Employer advances additional arguments on appeal, they lack merit and we do not discuss them. *See generally State v. Carter*, 776 P.2d 886, 888 (Utah 1989) ("[T]his Court need not analyze and address in writing each and every argument, issue, or claim raised.... Rather, it is a maxim of appellate review that the nature and extent of an opinion rendered by an appellate court is largely discretionary with that court.").